Don Carlos McGEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00862–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 17, 1995.

Richard A. Dawson, Richmond, for appellant.

John F. Healey, Jr., J. Sidney Crowley, Fort Bend, for appellee.

Before HEDGES, COHEN and WILSON, JJ.

## OPINION

HEDGES, Justice.

Appellant Don Carlos McGee was convicted of burglary of a building and was assessed punishment of 25–years confinement. We affirm.

### Facts

On December 18, 1990, at about 5:00 p.m., Steven Ireland was sitting in his car in front of a flower shop on Morton Street in Richmond, Texas. He saw appellant and another man, later identified as Adrian Samuel, walking down 10th Street. Appellant was carrying a maroon bag. The two men stopped briefly to talk to someone in a pickup truck and then turned onto Morton Street. They then walked to the front door of a vacant house at 1012 Morton Street. They looked around as if to see if anyone were watching, opened the front door, and went inside.

After about three minutes, Ireland went into the flower shop and asked the owner to call the police. Officers Ivy and Decatur from the Richmond Police Department arrived within a few minutes. Officer Ivy went inside the house, and Officer Decatur went around to the backyard. Ireland and the owner of the flower shop saw appellant and Samuel leave the house through one of the windows and alerted the officers. Officer Decatur saw the two men jump a fence and start to run in his direction down a passageway between the fence and another house. He recognized Adrian Samuel. He ordered both men to stop, but they continued to flee.

Officer Ivy went back into the house to investigate. He noticed that a kitchen window was broken and that two air conditioning units had been removed from the windows and were lying on the floor. One unit was wrapped in a blanket. Ireland testified that the dining table incongruously located on the front porch had been there when appellant and Samuel entered the premises.

A few minutes later, appellant was apprehended and arrested. The maroon bag that he was carrying contained a flashlight, a screwdriver, two batteries, a food stamp card, a birth certificate, nail clippers, a fingernail file, tweezers, a fingernail knife, several pieces of paper, two ballpoint pens, a piece of wood, a marker, a Social Security card, an address book, a black compact, two Tylenol tablets, a tube of glue, and a condom.

The owner of the house and a real estate agent testified that the house was vacant and was for sale. The owner testified that when she had visited the house one or two weeks before the incident, the furniture and air conditioners were in place inside the house and the window was not broken. The owner

testified that the house was not open to the public and that she had not given appellant permission to enter it. The house had been burglarized five or six times before this incident.

### The Venire

■ In point of error one, appellant contends that the trial court erred in refusing to dismiss the venire after a prospective juror stated that she knew appellant had prior convictions.

During voir dire, the prosecutor asked the venire if anyone knew appellant or his family. Dolores McLean, a member of the venire, raised her hand, and the prosecutor asked her to approach the bench. Outside the hearing of the jury panel, McLean stated that she had known appellant for about 20 years and that he is the father of her nephew. The prosecutor asked her if she would have a difficult time finding appellant guilty and assessing punishment. She responded:

It's not that. It's other things that have happened, and I wouldn't want to be—I don't know whether I could—I can say put the past behind me and go on with it.

. . . .

With that, it's personal; and so that's the reason I wouldn't want to be on the jury.

When the trial court asked her if she could be a fair and impartial juror knowing what she knew about appellant, she responded that she did not know "because it would be hard." Defense counsel asked that she be excused, but the trial court instructed her to take a seat. Later remarks by the prosecutor indicate that at least he assumed that McLean had been "excused in all things except her presence."

Later during voir dire, defense counsel asked the venire whether, in light of the prosecutor's remarks concerning prior convictions, anyone believed that appellant might have a prior conviction. McLean responded, "I don't believe it. I know of prior convictions." Out of the hearing of the jury, the defense counsel argued to the trial court that McLean's remark was made in front of the entire panel, was extremely prejudicial to

appellant, and polluted the entire process. He requested that the panel be instructed to disregard the comment and asked for a mistrial.

The prosecutor argued that the remark was in response to a direct question asked by defense counsel and that it was said very quietly "to the point even the Court didn't hear it." The trial court instructed the jury panel to disregard the comment and reiterated that anything said during voir dire was not evidence. Defense counsel did not reurge his motion for mistrial.

At the conclusion of voir dire, the defense counsel informed the judge that one prospective juror, Ms. Johnson, needed to discuss a problem. At the bench, she stated that McLean's earlier remark affected her:

I know that's not considered evidence; but if that woman knows this family, I would have to believe her. I think she knows. That does affect me because I definitely have a different feeling towards someone who has been in trouble than someone who possibly was picked up as a suspect.

With both attorneys' consent, the trial court excused Johnson.

■ The conduct of the voir dire examination lies within the sound discretion of the trial court. *Mendoza v. State,* 552 S.W.2d 444, 447 (Tex.Crim.App.1977). After a trial court denies a defendant's motion to discharge or quash a jury panel because of a prejudicial remark made by a prospective juror, the defendant must show (1) other members of the jury panel heard the remark; (2) those who heard the remark were influenced by it to the prejudice of the defendant; and (3) the juror in question or any other juror who may have had a similar opinion was forced upon appellant. *Callins v. State,* 780 S.W.2d 176, 188 (Tex.Crim.App.1986), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990). In the absence of such a showing, no harm to the defendant is shown. *Id.*

We infer from the record that other members of the venire heard the remark, even though appellant did not question the other members of the venire to determine whether

they in fact heard it. Veniremember Johnson clearly did, and the fact that the trial court instructed the venire to disregard McLean's remark lends credence that it was widely heard. There is no evidence in the record, however, that those who heard the comment, other than Ms. Johnson, were influenced by it. Nor is there evidence that appellant was forced to accept a juror who was prejudicially influenced. *Callins*, 780 S.W.2d at 188. Appellant has failed to show harm arising from McLean's remark.

We overrule point of error one.

### Sufficiency of the evidence

In point of error two, appellant contends that the evidence is insufficient to support his conviction for burglary because the State did not show that he entered the building with the intent to commit theft.

When reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not authorized to reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Although circumstantial evidence is not tested by a different standard of review than direct evidence, a conviction based upon circumstantial evidence cannot be sustained if the evidence does not exclude every reasonable hypothesis other than the guilt of the defendant.[1] *Fuller*, 827 S.W.2d at 931.

Intent, as an essential element of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise. *Coleman v. State*, 832 S.W.2d 409, 413 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd). However, the jury is exclusively empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the defendant entered. *Id.* Thus, intent may be inferred from the defendant's conduct and surrounding circumstances. *Linder v. State*, 828 S.W.2d 290, 294 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd).

In this case, appellant and Samuel entered a house not open to the public. When the police arrived, appellant climbed through a side window, ignored orders from police officers to stop, and fled the scene. When apprehended, he was carrying a bag that contained, among other items, a screwdriver and a flashlight. The air conditioning units, formerly mounted in the windows, had been removed and were lying on the floor.

Sufficient evidence of intent to commit theft has been found in similar cases. *See, e.g., Stearn v. State*, 571 S.W.2d 177, 177 (Tex.Crim.App.1978) (the defendant was discovered in the kitchen, nothing had been disturbed, and the defendant immediately fled); *White v. State*, 630 S.W.2d 340, 342 (Tex.App.—Houston [1st Dist.] 1982, no pet.) (the defendant moved welding equipment from back of garage to the front); *Armstrong v. State*, 781 S.W.2d 937, 939 (Tex. App.—Dallas 1989), *aff'd*, 805 S.W.2d 791 (Tex.Crim.App.1991) (the defendant was seen breaking into a building, items on a desk had been moved, and papers had been shuffled).

Moreover, there was no evidence that appellant entered the house with any intent other than that of committing theft. *See Stearn*, 571 S.W.2d at 178 (a jury's finding of intent to commit theft will not be disturbed on appeal where there is no testimony to indicate that the entry was made with any other intent). We find that a rational trier of fact could have found beyond a reasonable doubt that appellant entered the house with the intent to commit theft.

We overrule point of error two.

---

1. We note that the use of the "reasonable hypothesis" analytical construct has been abrogated. *See Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim.App.1991). However, appellant was tried before the *Geesa* opinion issued on November 6, 1991, and the *Geesa* holding is not to be applied retroactively. *Id.* at 165.

## Jury charge

In point of error three, appellant contends that the trial court reversibly erred in the punishment phase of trial by instructing the jury on parole and the effect of good conduct under TEX.CODE CRIM.P.ANN. art. 37.07, § 4 (Vernon Supp.1995). He argues that the instruction found in article 37.07 is unconstitutional under TEX.CONST. art. I, §§ 13 and 19, and that the legislature exceeded its authority in 1989 when it reenacted section four of article 37.07.

In this case, the trial court instructed the jury pursuant to article 37.07, section four, which provides that a court shall charge the jury, in part, as follows:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time....

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable to this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed, or fifteen years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

> . . . .

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

In *Rose v. State*, 752 S.W.2d 529, 552–53 (Tex.Crim.App.1987) (op. on reh'g), the court of criminal appeals held that section four of article 37.07 and the instruction it mandated were unconstitutional because they violated the separation of power provision in TEX. CONST. art. II, § 1 and the due course of law provisions in TEX. CONST. art. I, §§ 13 and 19.

Two years later, in 1989, the Texas Constitution was amended to permit the legislature to enact "laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole." TEX. CONST. art. IV, § 11(a). Under this constitutional authority, the legislature reenacted section four of article 37.07.[2]

The court of criminal appeals has rejected appellant's argument that the instruction in article 37.07, § 4 is unconstitutional. *Oakley v. State*, 830 S.W.2d 107, 111 (Tex.Crim.App. 1992). In that case, the court held that because the amendment to article IV of the constitution removed the due course of law and separation of powers constraints that plagued the former article 37.07, the reenactment of article 37.07 was constitutional. *Id.; see also Garrett v. State*, 834 S.W.2d 605, 607 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

We overrule point of error three.

We affirm the judgment of the trial court.

COHEN, J., concurs.

WILSON, J., dissents.

COHEN, Justice, concurring.

I join Justice Hedges' opinion for several additional reasons. The evidence of guilt was overwhelming; I see no chance that Ms. McLean's remark could have interfered with the jury's deliberation of the case. Moreover, the judge's instruction to disregard should be presumed, at least on this state of the record, to have cured any possible harm. Because the State did not cause this error, affirming the judgment will not encourage its repetition. Finally, the error was plainly harmless at the punishment stage because appellant received the minimum punishment after his prior convictions were proved by overwhelming evidence, including his own testimony.

WILSON, Justice, dissenting.

Because I disagree with the majority's application of the facts of this case to the controlling law, I respectfully dissent.

**2.** Act of May 17, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex.Gen. Laws 442, 442–43.

Following a denial of a defendant's motion to quash a jury panel because of alleged prejudicial remarks made before the venire, a defendant must prove to show harm:

(a) other members of the jury panel heard the remark(s);

(b) those who heard the remark(s) were influenced by it to the prejudice of the defendant; and

(c) the juror in question or any other juror who may have had a similar opinion was forced upon the defendant.

*Callins v. State,* 780 S.W.2d 176, 188 (Tex. Crim.App 1986), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990) (citing *Johnson v. State,* 205 S.W.2d 773, 774–75 (Tex.Crim.App.1947)).

I agree with the majority, and for the reasons the majority states, that we can infer from the record that other members of the panel heard the remark. However, I disagree with the majority's opinion that there is no evidence in the record that the others who heard the comment were influenced by it to appellant's harm, and that jurors so prejudicially influenced were forced upon appellant. I draw this conclusion from the character of the remark itself, not a statement of subjective prejudicial feeling as in *Callins* and *Johnson,* but one of hard fact from someone who apparently knew the appellant. In my judgment, the statement made was of such a character, and had such a prejudicial nature, that those who heard it were necessarily influenced by it to the harm of appellant.

In *Callins,* the prejudicial remark was a racial slur. 780 S.W.2d at 188. In *Johnson,* the damaging remark was the venire-member's attitude about what to do with killers generally. 205 S.W.2d at 774. In both cases, the remarks flowed from subjective feelings and prejudices.[1] An inquiry by the trial judge regarding the second prong of the test, whether other jurors would be influenced by the remarks, would be meaningful. Some jurors might share the *Callins'* venire-member's racial hostilities, but no one could assume that all would. In fact, I would argue that the most common response would be disgust.

Reason and human experience would also lead a trial judge to conclude that the venire would have many different opinions about the *Johnson* remarks. Again, an inquiry into the impact of the remark on the jurors would be fruitful to allow the trial judge to separate the prospective jurors who might share the prejudicial view expressed by the venire-member from those who were willing to hear the evidence impartially.

Here, Ms. McLean told defense counsel she knew appellant had prior convictions. Again, this statement was not an expression of subjective opinion that might affect members of the venire differently; it was a statement of fact that was damaging to appellant. Ms. Johnson, a prospective juror, told the trial court she was affected by what Ms. McLean had said.

Under the facts of this case, I would argue that Ms. Johnson's remarks before the bench that she was impacted by Ms. McLean's comments spoke for the whole venire. It is my judgment that Ms. Johnson's reaction to the remark would be pervasive throughout the jury because it was a reasonable, understandable, and likely reaction to the facts expressed. Any further inquiry made by the trial judge regarding McLean's facts could only repeat and further emphasize the prejudicial information.

I would hold appellant suffered harm and sustain point of error one.

---

1. *But see Ashcraft v. State,* 900 S.W.2d 817 (Tex. App.—Corpus Christi, 1995, no pet. h.). However, *Ashcraft* is distinguishable because, unlike this case, there was no evidence that other venire members heard the remark or were influenced by it.