Opinion issued March 4, 2004







            











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00200-CR
____________
 
STANTON LAROY CAVINESS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 923096
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Stanton Laroy Caviness, guilty of the second degree
felony offense of criminal attempt


 with intent to commit arson of a habitation.


 
Appellant elected to have the trial court assess punishment, and the trial court
sentenced appellant to confinement for six years and a fine of $600. The trial court
then suspended the imposition of the sentence of confinement and placed appellant
on community supervision.
          In two points of error, appellant contends that (1) the evidence was factually
insufficient to support his conviction and (2) the trial court erred in denying his
motion for a mistrial, which was based on the fact that an incorrect range of
punishment for the offense was provided to the jury during voir dire.
          We affirm.
Factual and Procedural Background
          In September 2002, appellant lived in a camper on property owned by his
girlfriend, Donna Morphis, the complainant. The complainant and her daughters,
Krista and Jamie Morphis, lived in a trailer on the same property.
          Nathan Paul, a friend of Krista, testified that, on the afternoon of September 3,
2002, he helped appellant remove some carpet from inside the complainant’s trailer. 
While they were working, Paul saw appellant consume “one, maybe two drinks” of
whiskey. At some point later that afternoon, Paul left the property to “run an errand”
for appellant “[t]o go get a bottle of whiskey.”
          That evening, Paul took Krista out for dinner. When Paul and Krista returned,
appellant told Paul that appellant and the complainant had been arguing and that the
complainant had ordered appellant to vacate the property within 72 hours. Paul then
left the complainant’s property to go to his home. On his way home, Krista paged
Paul, and, when Paul called in response to the page, appellant told Paul that “he
wanted [him] there as a witness to what he could take off of the property.” When
Paul returned to the complainant’s property, he found the complainant and appellant
“yelling at each other” inside the complainant’s trailer.
          Paul further testified that, shortly after he entered the trailer, appellant left,
carrying a whiskey bottle. The complainant followed appellant, yelled at him, and
then came back inside the trailer to retrieve a shotgun. Paul explained that, at
appellant’s request, Paul had removed the shells from the shotgun earlier that day.


 
As she grabbed the shotgun from inside the trailer, the complainant yelled, “He’s
pouring gasoline on the house!” The complainant then went outside, carrying the
shotgun.
          When the complainant reached the bottom of the stairs outside the trailer, she
collided with appellant, who was carrying a gasoline can. When appellant and the
complainant collided, some of the gasoline splashed out of the can, and appellant
dropped the can. Paul then saw appellant wrestle the shotgun away from the
complainant, knock her to the ground, and throw the shotgun away. At that point,
Paul smelled a “very strong” odor of gasoline next to the trailer, and he saw appellant
holding a lighter and “striking it.” Paul, fearing for the lives of the complainant and
her daughters, then pointed a .22 pistol, which he had brought with him, at the ground
and told appellant to “get off the property,” or Paul would shoot.
          Paul and appellant “yelled at each other for a few minutes,” and appellant told
Paul that “all he want[ed] [wa]s his stuff.” Paul agreed to help appellant “get his
stuff,” and appellant then “grabbed his bottle of whiskey and went to leave” the
complainant’s property. Appellant unhooked the electricity and water connections
from his camper and drove it off its blocks. Paul opened the gate to the complainant’s
property and moved his own truck, which was blocking the driveway, and appellant
drove away.
          Krista testified that appellant and the complainant had been arguing that
evening and that the complainant was “very upset” and “very unorganized in her
mind.” Krista noted that appellant had been drinking alcohol that day, and, when
asked how much alcohol appellant had consumed, she stated: “He had about his
usual, which was maybe around half of a—half a gallon, if that. That’s what he had.” 
After Krista got home from dinner, appellant asked her to page Paul “so somebody
would be there to say afterwards what had happened in a clear state of mind,” and she
did.
          Krista also testified that, when the complainant came inside the trailer, she told
Krista to call for emergency assistance because appellant was pouring gasoline on the
trailer and “was trying to burn the house down.” Krista admitted that, although she
later smelled a “strong odor” of gasoline outside, she did not see appellant pour any
gasoline on the trailer. Krista testified that she saw appellant struggle with the
complainant for the shotgun and that, after Paul pointed his pistol at appellant and
ordered him to “stop,” she saw appellant “backing up towards the trailer” while
striking a lighter.
          Harris County Arson Investigator Kenneth Callaway testified that he was
dispatched to the complainant’s property that evening. Upon his arrival, Callaway
interviewed the complainant, her daughters, and Paul. Callaway detected a “strong
odor of gasoline around the home” and determined that “[t]he exterior of the home
and the grass at the base of the home was saturated with liquid that smelled like
gasoline.” By examining the grass and dirt around the trailer, Callaway also
determined that a wet trail of gasoline extended approximately 50 feet along the entire
length of one side of the trailer.
          Callaway also testified that, after interviewing the witnesses at the scene, he
prepared a written statement for the complainant, which she read and signed under
oath that same evening. The written statement was admitted into evidence and read
as follows:
On Monday September 02, 2002, I began arguing with my boyfriend
[appellant] about family members. [A]ppellant stays in a motor home on
my property. [A]ppellant had been drinking whiskey all day. [A]ppellant
began threatening me and my family. He said he was going to kill us
and burn my house. He went outside. I went out and saw him pouring
gasoline on the side of my house. I ran inside and got my shotgun and
told my family he was setting the house on fire. I went outside and told
him to stop. We began scuffling and he took the shotgun away from me. 
He grabbed me and threw me to the ground. I hurt my back. He began
flicking his lighter. My daughter’s boyfriend had a pistol and stopped
[appellant] from lighting the gasoline. [A]ppellant ran to his motor home
and left. When [appellant] was pouring the gasoline he splashed it on
me.

          The complainant testified that, as of the time of trial, she and appellant were
living together in her trailer. The complainant admitted that, before trial, she had
been reluctant to discuss this incident with the prosecutor and had asked the
prosecutor to dismiss the case. The complainant denied that appellant had ever
threatened her or her family, and she denied seeing appellant pour gasoline on the
trailer. The complainant also testified that she did not recall speaking with or giving
a statement to Callaway, although she admitted that her signature appeared on the
statement.
          Appellant testified that he and the complainant had been arguing because the
complainant was upset and “extremely unrational [sic]” about her oldest daughter’s
behavior. Appellant admitted that he had been drinking that day, but testified that he
had consumed only two drinks. He stated that, after the complainant had told him to
vacate the property, he began gathering his belongings. As they discussed what
appellant could take with him, appellant asked Krista to page Paul to come and to act
as a “mediator” because the complainant “started demanding things that didn’t belong
to her.”
          When appellant was preparing to leave, he went outside to get a gasoline can
to make sure that his camper was full of gasoline before he left. As appellant walked
toward his camper, he tripped, fell on his knee, and dropped the gasoline can. 
Because the top on the can was loose, it came off when he fell, and “[a] pint or two”
of gasoline spilled on the ground. The lighting was poor, and he had some difficulty
trying to find the cap. Appellant then heard the complainant yelling and turned to see
her coming out of the trailer with a shotgun in her hand. Although he knew that the
shotgun had previously been unloaded, appellant was afraid, grabbed the shotgun
from the complainant, and threw it away from where they were standing. When he
did so, some gasoline from the can splashed on the complainant. Paul then pointed
a pistol at appellant and said, “Don’t make me shoot you.” After Paul had threatened
him, appellant held up his lighter and started backing up toward the trailer as a threat
so as to prevent Paul from shooting him. Appellant further testified that he had no
intention of igniting the gasoline near the trailer because all of his clothes and
personal papers were in the trailer, along with an expensive saddle, a pet dog, and a
ferret.
Sufficiency of the Evidence
          In his first point of error, appellant argues that the evidence was factually
insufficient to support the jury’s verdict because “[g]iven the testimony as it
developed, it appears that [appellant] was simply trying to extricate himself from a
bad situation where he was threatened by two different people with firearms, and may
have used whatever he had available to [sic] hand.”
          We review the factual sufficiency of the evidence by examining all of the
evidence neutrally and asking whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or whether the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).
          A person commits the offense of criminal attempt if, with specific intent to
commit an offense, he does an act amounting to more than mere preparation that
tends, but fails, to effect the commission of the offense intended. Tex. Pen. Code
Ann. § 15.01(a) (Vernon 2003). The offense of criminal attempt is “one category
lower than the offense attempted.” Id. § 15.01(d) (Vernon 2003). A person commits
a first degree felony offense if the person starts a fire with intent to destroy or to
damage a habitation. Id. § 28.02(a), (d) (Vernon 2003).
          Here, appellant testified that he never intended to burn down the trailer and that
his actions were simply misinterpreted by the complainant and the other witnesses. 
Also, the complainant, at trial, recanted her statements to Callaway and testified that
she did not see appellant pouring gasoline on the trailer.
          However, the complainant also admitted that appellant was living with her and
that she had asked the prosecutor to dismiss the case. Moreover, Paul, the
complainant’s daughter, and Callaway testified that the complainant told them that
she saw appellant pouring gasoline on the trailer. The jury was presented with
testimony that appellant, who had been drinking that day, argued with the
complainant that evening and, after he struggled with the complainant over the
shotgun, threatened to ignite the gasoline next to the trailer with a lighter. Callaway’s
testimony that the trail of gasoline extended the length of the trailer was inconsistent
with appellant’s testimony that he had accidently spilled only “[a] pint or two” when
he tripped and fell.
          Juries may infer intent from a defendant’s conduct and the surrounding facts
and circumstances. LaPoint v. State, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986);
McGee v. State, 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.). 
The jury may simply have found appellant’s version of events to be not credible and
the testimony of Paul, the complainant’s daughter, and Callaway to be credible. 
Evidence is not factually insufficient merely because a defendant offers a different
explanation for the facts. Russell v. State, 665 S.W.2d 771, 776 (Tex. Crim. App.
1983). The jury, as the trier of fact, was the sole judge of the credibility of the
witnesses and was free to accept or to reject all or part of the witnesses’ testimony. 
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Based on the record
presented, we hold that the evidence was factually sufficient to support the jury’s
verdict.
          Appellant also argues in his first point of error that “the State failed to prove
beyond a reasonable doubt that this incident was not self-defense.”


 The record
indicates that appellant did not request that a self-defense instruction be included in
the jury charge, did not object to the trial court’s failure to include such a charge, and,
on appeal, appellant does not challenge the trial court’s failure to include such a
charge. Thus, appellant has waived any complaint on this issue. See Tex. R. App. P.
33.1(a); Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004).
          We overrule appellant’s first point of error.
Motion for Mistrial
          In his second point of error, appellant argues that the trial court erred in
denying his motion for a mistrial because the trial court erroneously instructed the
venire panel on the range of punishment, and appellant “thus had no opportunity to
use his peremptory strikes intelligently since he had not discussed the jurors’ views
on the range of punishment.”
          A trial court may declare a mistrial when an error occurs that is so prejudicial
that the expenditure of further time and expense would be wasteful. Wood v. State,
18 S.W.3d 642, 648 (Tex. Crim. App. 2000). We review the denial of a motion for
mistrial under an abuse-of-discretion standard. Ladd v. State, 3 S.W.3d 547, 567
(Tex. Crim. App. 1999).
          Here, during voir dire, the trial court erroneously instructed the venire panel
that the range of punishment for the offense of criminal attempt with intent to commit
arson of a habitation was confinement for two to 10 years. In fact, the punishment
range is two to 20 years.


 Appellant made no objection to the trial court’s error
during voir dire. After the members of the jury were selected, but before they were
sworn, the trial court realized its error and brought it to the attention of the parties. 
Appellant then moved for a mistrial, without elaboration of the particular grounds
upon which it was based. The trial court denied the motion, instructed the 12 jurors
as to the correct range of punishment, and permitted counsel to conduct additional
voir dire of the jury on this issue. Appellant’s counsel asked no further questions of
the jurors. The trial court then administered the oath to the jurors.
          Appellant relies on Shipley v. State, 790 S.W.2d 604, 607-08 (Tex. Crim. App.
1990) for the proposition that, as a result of the trial court’s denial of his motion for
mistrial, appellant was denied his “right to effective assistance of counsel under
Article I, Section 10 of the Texas Constitution.”


 Texas courts have held that the
right to be represented by counsel includes the right of counsel to question the
members of the jury panel “in order to intelligently exercise peremptory challenges.” 
Id.
          We find Shipley to be distinguishable from the present case. In Shipley, the
defendant was unable to obtain certain information because the trial court refused to
permit the venire members to answer questions propounded by the defendant’s
counsel during voir dire. Id. at 608. Here, defendant’s counsel made no objection
during voir dire after the trial court incorrectly instructed the venire members as to
the range of punishment. Moreover, appellant has not shown how the trial court’s
incorrect instruction to the venire members concerning the applicable range of
punishment was “so prejudicial” as essentially to deny appellant a fair trial, especially
in light of the steps taken by the trial court to correct its error. See Wood, 18 S.W.3d
at 648. Nor has appellant shown what different or additional questions he would have
posed to the venire members concerning the correct range of applicable punishment
so as to “intelligently exercise his peremptory challenges.” Shipley, 790 S.W.2d at
607-08. Accordingly, we hold that appellant has not shown that the trial court abused
its discretion in denying his motion for mistrial.
          Even assuming that the trial court erred in denying appellant’s motion for
mistrial, appellant has not shown how he was harmed by such error. See Tex. R. App.
P. 44.2(b). After the jury found him guilty, appellant elected to have the trial court
assess punishment. The trial court imposed a punishment within the range that had
been incorrectly given to the venire members, suspended its sentence, and placed
appellant on community supervision. Accordingly, we hold that appellant has not
shown that the trial court’s denial of his motion for mistrial was harmful.
          We overrule appellant’s second point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Do not publish. Tex. R. App. P. 47.2(b).