Opinion issued November 1, 2007













     




In The
Court of Appeals
For The
First District of Texas




NO. 01–06–00713–CR




MARCUS EDWARD GAY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1009376




MEMORANDUM OPINION

          A jury convicted appellant, Marcus Edward Gay, of capital murder for
committing a murder in the course of committing a robbery. See Tex. Pen. Code
Ann. § 19.03(a)(2) (Vernon Supp. 2006). The State did not seek the death penalty. 
The trial court assessed punishment at confinement for life. 
          In three issues, appellant contends that (1) the trial court erred by admitting
hearsay testimony; (2) the trial court erred by refusing to instruct the jury on the
lesser-included offense of murder; and (3) the evidence is legally and factually
insufficient to support his conviction.
          We affirm.
Background
          In 2004, at the time of the incident, the complainant, Doris Sergent, was
sharing an apartment with her then 19-year-old son, Tyler Sergent. In the evenings
after work, the complainant usually kept to her bedroom and did not socialize when
Sergent brought friends to the apartment. Appellant, also age 19, was one of
Sergent’s friends and frequently visited Sergent at the apartment.
           Appellant and Sergent shared an interest in rap music. In late November 2004,
appellant contacted Sergent, seeking money to buy computer equipment for music
production. Sergent told appellant that he would give appellant $50.00 and a
microphone when Sergent received his paycheck on Friday, December 3, 2004. 
Appellant and Sergent agreed to meet at Sergent’s apartment at 6:00 p.m. that Friday.
          On Friday, December 3, 2004, Sergent left work and drove to pick up another
friend, Thomas Keller, who was to spend the evening working on music with Sergent
and appellant. At Keller’s house, Sergent and Keller became engrossed in watching
a news program and were delayed. At 6:30 p.m., Sergent received a phone call from
the complainant, stating that appellant was at the apartment and asking whether
Sergent had forgotten about meeting with appellant. Sergent told the complainant to
tell appellant to “sit tight” and to play Sergent’s PlayStation video games for awhile. 
          Sergent and Keller left Keller’s home at 7:00 p.m. While en route to Sergent’s
apartment, Sergent called the complainant twice but never received an answer. At
approximately 7:45 p.m., Sergent and Keller arrived at Sergent’s apartment and found
the complainant lying deceased on the living room floor. Her face was covered with
blood and a telephone cord was wrapped around her neck. Sergent and Keller ran
around the apartment looking for appellant, determined that he was gone, and called
the police.
          Sergent went down to the police station and gave a statement. When he
returned, he noticed that his PlayStation console was missing. Sergent searched the
apartment to determine if anything else was missing and saw that video games and
movies were missing from the chest of drawers in his bedroom. In addition, a knife
that the complainant kept behind the pillows on her bed was missing. Sergent’s
computer, monitor, and microphones had not been taken. 
          Officer R. Gutierrez, a Houston Police Department investigator, testified that
the complainant’s throat was cut very deeply and that the attack appeared to have
started in the bedroom and moved into the living room. Blood spatter located in the
complainant’s bedroom indicated that she had been struck at least twice with an
object while in her bedroom and that there had been a struggle. Blood was found on
the bed, pillows, and sheets. Blood on the carpeting led out of the complainant’s
bedroom and toward the living room, where blood spatter was found on the coffee
table and the couch. Officer Gutierrez explained that blood transfer found around the
complainant’s ankles indicated that the complainant most likely had been subdued by
the assailant while she tried to escape. The complainant had the telephone in her
hand and the cord had been pulled from the main base of the telephone. 
          Officer Gutierrez testified that there were also bloody footprints leading from
the living room back to Sergent’s bedroom. It was determined that the footprints did
not merely result from Sergent and Keller having run around the apartment looking
for appellant at the time they discovered the complainant. There was blood transfer
on the door and door jamb of Sergent’s room. Blood was also found on the cords that
had been connected to the PlayStation in Sergent’s room. There was no blood found
on the dresser from which the games and movies had been taken. 
          On December 4, 2004, the day after the incident, Sergeant C. Douglas of the
Houston Police Department conducted a videotaped interview of appellant, which
was subsequently admitted into evidence at trial. In his statement, appellant admitted
that he had gone to Sergent’s apartment on the evening of December 3, 2004.
Appellant stated that the complainant told him that Sergent was not home and that he
should wait in Sergent’s room and play on the computer. Appellant stated that the
complainant then came into Sergent’s room without any clothes on and attempted to
force herself upon appellant. Appellant stated that, when he refused, the complainant
threatened him by saying that Sergent and a friend were on the way to “get” him. 
Appellant stated that the complainant grabbed him from behind in a “bear hug” and
that appellant “bumped her into the wall” to force her to release him. Appellant
stated that the complainant fell, then got up and went into her room, put on a big shirt,
and got on the telephone. 
          Appellant stated that he picked up an object that looked like a paper weight and
threw it at the complainant, and that the complainant came out of her room and again
said that Sergent was on the way to get him. According to appellant, he hit her again,
and the complainant fell on the living room floor. Appellant stated that he then went
into the kitchen, grabbed a knife, and cut the complainant “around her neck area.” 
When asked why he cut the complainant, appellant responded, “I really don’t know
man.” Sergeant Douglas probed whether appellant was upset with Sergent for having
been late, and appellant denied having been upset.
          Appellant also admitted that he took the PlayStation game console and six
games from Sergent’s room. Appellant stated that he sold these items to a person on
the street for $50 as he was walking away from the apartment. Appellant said that he
threw the knife and paper weight into a bayou. 
          The police recovered the stolen PlayStation games and movies at a pawn shop. 
The evidence showed that appellant pawned seven games and a set of DVD movies
the day after the incident and bought a microphone at the same time. The police
recovered bloody sweat pants, tennis shoes, and tee shirt, and a microphone and video
game cables from appellant’s house. 
          At trial, the trial court denied appellant’s request that the jury be charged on the
lesser-included offense of murder. 
Hearsay Testimony
          In his first issue, appellant contends that the trial court erred by admitting
inadmissible hearsay. Specifically, appellant contends that Sergent’s testimony that
the complainant told him over the telephone at 6:30 on the evening of the incident
that appellant was waiting at the apartment constituted inadmissible hearsay.
 
A.      Standard of Review and Applicable Law
 We review a trial court’s ruling on the admissibility of testimony for an abuse
of discretion. Salazar v. State, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We
will uphold the trial court’s decision unless it lies outside the zone of reasonable
disagreement. Id.
          Hearsay is “a statement, other than one made by the declarant while testifying
at trial or hearing, offered in evidence to prove the truth of the matter asserted.” Tex.
R. Evid. 801(d). Hearsay statements are inadmissible except as provided by statute
or other rule. Tex. R. Evid. 802; see Tex.R. Evid. 803 (providing exceptions). An
extrajudicial statement that is offered for the purpose of showing what was said rather
than for proving the truth of the matter stated therein, does not constitute hearsay.
Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); Gonzales v. State, 190
S.W.3d 125, 133–34 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).
          The erroneous admission of a hearsay statement constitutes non-constitutional
error that is subject to a harm analysis. See Tex. R. App. P. 44.2(b); Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Non-constitutional error must be
disregarded unless it affected a substantial right of the defendant. Tex. R. App. P.
44.2(b); Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). A substantial right
is affected when the error had a substantial and injurious effect in determining the
verdict. Johnson, 43 S.W.3d at 4. A conviction should not be overturned for such
error if this court, after examining the record as a whole, has fair assurance that the
error did not influence the trial court or had but a slight effect. See Johnson, 967
S.W.2d at 417.
B.      Analysis
          Appellant complains of the following colloquy that took place during the
State’s direct examination of Sergent:
          State:           Okay. And while you were picking up Thomas, did you get
a phone call from somebody?
          [Sergent]:    I got a phone call from my mother. That’s on the way to
[Keller’s] house.
          State:           Tell the jury about the phone call.
          [Sergent]:    My mother called me and she asked me did I forget—
          Defense:      Objection to what she asked as hearsay.
          [Sergent]:    What?
          State:           Your honor, I don’t believe it’s for the truth of the matter
asserted. I believe it’s the reason for his actions.
          Court:          Overruled.
          [Sergent]:    Okay. She called me asking me did I forget that Marcus
was here. I told her, No. I told her to tell him to sit put
[sic] and play the game. I will be back.
 
          Although appellant objected the first time that the contents of the conversation
was raised in the testimony, the complainant’s statement that appellant was at the
apartment came in at additional times during direct examination of Sergent without
objection. In addition, Keller testified, without objection, that Sergent told him that
the complainant had called and said that appellant was waiting at his apartment. 
Further, defense counsel elicited this same testimony from Sergent during cross-examination as follows:
          [Defense]:   Let me go back. I don’t want to put words in your mouth. 
You tell me, if you know, about what time it was the last
time you talked to your mom that night.
          [Sergent]:    The last time I talked to my mother is when she called me,
indicating that [appellant] was at the house. That was the
last time I spoke to her.
          [Defense]:   Okay. Now, do you have an idea, just for the jury’s sake,
about what time that would have been?
          [Sergent]:    Between 6:30 to 7:00.
          . . . . 
          [Defense]:   Okay. And you told your mother—if I understand this
correctly, you told your mother to tell [appellant] to sit
tight?
          [Sergent]:    Yes.
          [Defense]:   Play some games and you’d be there shortly?
          [Sergent]:    Yes, sir. 

          To preserve error for appellate review, appellant was required to timely object
each time the testimony was brought in. See Tex. R. App. P. 33.1; Tex. R. Evid.
103(a)(1). Because appellant permitted the contents of the complainant’s statement
to come in without objection, appellant has waived the issue. See Tex. R. App. P.
33.1. 
          Accordingly, we overrule appellant’s first point of error.
Lesser-Included Instruction
          In his second point of error, appellant contends that the trial court erred by
refusing to instruct the jury on the lesser-included offense of murder. Appellant
contends that he was entitled to the instruction because the State failed to prove that
he committed the murder during the course of committing a robbery. Specifically,
appellant contends that the evidence does not show that he formed the intent to take
property from the complainant at or before the time he killed her; rather, the evidence
shows that the taking was an afterthought.
          A defendant is entitled to an instruction on a lesser-included offense if (1) the
lesser offense is a lesser-included offense of the charged offense and (2) there is some
evidence in the record that would permit a jury rationally to find that if the defendant
is guilty, he is guilty only of the lesser offense. Guzman v. State, 188 S.W.3d 185,
188 (Tex. Crim. App. 2006). 
          Under prong one, we compare the elements of the charged offense, as modified
by the indictment, with the elements of the lesser offense that might be added to the
jury charge. Id. We compare the elements of both offenses to determine whether, in
proving the offense as charged, the State necessarily had to prove all the elements of
the lesser offense, plus something more.” Id. at 189 & n.7 (applying Tex. Code
Crim. Proc. Ann. art. 37.09 (Vernon 2006)). If prong one is met, we then consider,
under prong two, whether there is some evidence from which a jury rationally could
find that, if defendant is guilty, he is guilty only of the lesser offense. Id. At this step
of the analysis, “the evidence must establish the lesser-included offense as a valid,
rational alternative to the charged offense.” Hall v. State, 225 S.W.3d 524, 536 (Tex.
Crim. App. 2007).
          Here, the elements of capital murder, as alleged in the indictment, are that (1)
the defendant, (2) while in the course of committing and attempting to commit a
robbery of [complainant], (3) intentionally caused the death of [the complainant] by
cutting [the complainant] with a deadly weapon, namely, a knife. See Tex. Pen.
Code Ann. § 19.03(a)(2). The elements of the lesser offense of murder are (1) the
defendant; (2) intentionally or knowingly; (3) causes the death of an individual. Id.
§ 19.02(b)(1) (Vernon 2003). 
          The first prong of the test is met because the Texas Court of Criminal Appeals
has recognized that intentional murder is a lesser included offense of capital murder. 
Robertson v. State, 871 S.W.2d 701, 706 (Tex. Crim. App. 1993). Hence, appellant
was entitled to a charge on the lesser-included offense if prong two is met, that is, if
there is some evidence in the record that would a permit a jury rationally to find that,
if guilty, appellant was only guilty of the lesser offense of murder. See Guzman, 188
S.W.3d at 189. 
          Here, to support the charge of capital murder, the State was required to prove
that appellant’s intent to rob the complainant was formed before or at the time of the
murder. See Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Proof that
a robbery occurred as an afterthought and unrelated to the murder does not support
a charge of capital murder. Id. If the requisite intent to commit a robbery was formed
prior to or at the time of the murder, the element of appropriation may occur after the
murder. Nelson v. State, 848 S.W.2d 126, 132 (Tex. Crim. App. 1993).
          We consider whether there is some evidence that would permit a jury rationally
to find that appellant had not formulated an intent to rob the complainant before or
as he killed her. See Robertson, 871 S.W.2d at 706. If there is some evidence which
negates the aggravating element of the greater offense or if the evidence of such
aggravating element is so weak that a rational jury might interpret it in such a way as
to give it no probative value, then appellant was entitled to a charge on the lesser
included offense. See id. 
          First, appellant contends that “the habits of the complainant could be
interpreted as supporting a finding that appellant took [Sergent’s] video game
equipment . . . as an afterthought.” Appellant contends that, because the complainant
normally stayed in her room, “it would not have been necessary for [appellant] to use
force against the complainant, let alone deadly force, in order for him to have
removed [Sergent’s] video game equipment from the apartment.” Appellant does not
explain in his brief why this point shows that appellant, if guilty, was only guilty of
murder. His point seems to go more to whether appellant intended a murder at the
time of the robbery. The issue is whether appellant possessed the requisite intent to
take the console, games, and movies at or before the time he committed the murder. 
See Conner, 67 S.W.3d at 197.
          Second, appellant contends that the evidence that he did not ransack the
apartment or take other specific items, namely, a microphone in Sergent’s room or the
complainant’s purse, supports that he took the “video game equipment” only as an
afterthought. The State was required to show that the murder was committed “in the
course of committing or attempting to commit a robbery.” See Tex. Pen. Code Ann.
§ 19.03(a)(2). Thus, even evidence of an attempt to commit a robbery would suffice. 
As such, the statute does not require that the State show an actual appropriation of
any property, let alone specific items. See Bustamante v. State, 106 S.W.3d 738, 740
(Tex. Crim. App. 2003). Moreover, the evidence shows that appellant knew that
Sergent and Keller were on their way to the apartment. The evidence that appellant
did not take the time to ransack the apartment or look for other items to steal does not
negate the aggravating element—that he intended to take the video games, console,
and movies at the time he killed the complainant. See Robertson, 871 S.W.2d at 706;
Castillo v. State, 221 S.W.3d 689, 693–94 (Tex. Crim. App. 2007) (concluding that
existence of money and jewelry left behind in victim’s possession does not negate
that murder was in course of robbery) .
          The evidence shows that appellant took seven video games and a boxed set of
DVD movies from the third drawer of a chest in Sergent’s room. Sergent testified
that these items were in the drawer and the drawer was closed when he went to work
on the morning of the incident. The drawer was open when Sergent returned after the
murder. The evidence shows that appellant’s hands were bloody when he went back
to Sergent’s room after the murder. However, the evidence shows that there was no
blood found on the drawer or chest. A jury rationally could conclude that appellant
removed the seven video games and the boxed set of DVD movies, intending to take
them, prior to committing the murder. See Nelson, 848 S.W.2d at 131. We cannot
conclude that “the evidence of such aggravating element is so weak that a rational
jury might interpret it in such a way as to give it no probative value.” See Robertson,
871 S.W.2d at 706.
          Appellant has not demonstrated that there is evidence from which a jury
rationally could find that, if defendant is guilty, he is guilty only of the lesser offense. 
Guzman, 188 S.W.3d. at 189. We cannot conclude that the evidence establishes the
lesser-included offense of murder “as a valid, rational alternative to the charged
offense.” See Hall, 225 S.W.3d at 536.
          Accordingly, we overrule appellant’s second point of error. 
           Sufficiency of the Evidence
          In his remaining four points of error, appellant argues that the evidence was
legally and factually insufficient to support his conviction. Specifically, appellant
contends that the evidence is insufficient to show (1) that he formed the intent to steal
the video games and console prior to committing the murder and (2) that he
appropriated property that belonged to the complainant.
A.      Standards of Review
          A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Parker v. State, 192 S.W.3d 801,
804 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). Although our analysis
considers all of the evidence presented at trial, we may not re-weigh the evidence and
substitute our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000). 
          We begin the factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). When conducting a factual-sufficiency review, we view
all of the evidence in a neutral light. See Cain v. State, 958 S.W.2d 404, 408 (Tex.
Crim. App. 1997). We will set the verdict aside only if (1) the evidence is so weak
that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the
great weight and preponderance of the evidence. Johnson, 23 S.W.3d at 10–11.
Under the first prong of Johnson, “[we] cannot conclude that a conviction is ‘clearly
wrong’ or ‘manifestly unjust’ simply because, on the quantum of evidence admitted,
we would have voted to acquit had [we] been on the jury.” Watson v. State, 204
S.W.3d 404, 416–17 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id.
          When conducting a factual sufficiency review, we must discuss the evidence
that, according to appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). The fact-finder alone determines what
weight to give contradictory testimonial evidence because that question depends on
how the fact-finder evaluates credibility and demeanor. Cain, 958 S.W.2d at 407–08.
As the determinor of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented. Id. at 407 n. 5.
B.      Applicable Law
          A person commits capital murder if he commits murder as defined under
Section 19.02(b)(1) and, inter alia, the person intentionally commits the murder in the
course of committing or attempting to commit . . . robbery.” Tex. Pen. Code Ann.
§ 19.03(a)(2). A person commits murder if he “intentionally or knowingly causes the
death of an individual.” Id. § 19.02(b)(1) (Vernon 2003). A person commits robbery
if, in the course of committing theft, as defined in Chapter 31, and with intent to
obtain or maintain control of property, he intentionally, knowingly, or recklessly
causes bodily injury to another, or intentionally or knowingly places another in fear
of imminent bodily injury or death. Id. § 29.02(a). Theft is the unlawful appropriation
of property with the intent to deprive the owner of the property. Tex. Pen. Code
Ann. § 31.03 (Vernon Supp. 2006).
          A person acts intentionally with respect to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or to cause the result. Tex.
Pen. Code Ann. § 6.03(a) (Vernon 2003). A jury may infer intent from a defendant’s
acts, words, and conduct; from the nature of the crime; and from the wounds inflicted
on the victim. Hart v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); McGee v.
State, 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.).
 C.       Legal Sufficiency
           In his third and fifth points of error, appellant contends that the evidence is
legally insufficient to support his conviction. Specifically, appellant contends that
the State failed to prove (1) that he formed the intent to take the video game
equipment before or at the time of the murder, rather than as an afterthought, and (2)
that he unlawfully appropriated property of the complainant.
           1.       Formation of intent to rob
           Here, the State presented evidence that appellant intentionally caused the death
of the complainant. The evidence shows that appellant admitted that he struck the
complainant in the head with a paperweight and then cut her neck with a butcher
knife. The evidence shows that wound he inflicted was very deep and that a
tremendous amount of blood loss occurred. In addition, the evidence shows that
appellant wrapped a telephone cord around the complainant’s neck. From this
evidence, the jury could infer that appellant intended to kill the complainant. See
Hart, 89 S.W.3d at 64; McGee, 923 S.W.2d at 608. 
           As discussed above, for a murder to constitute a capital murder committed in
the course of a robbery, the intent to rob must be formulated before or at the time of
murder. Herrin v. State, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002). Proof that the
robbery was an afterthought and unrelated to the murder is not sufficient. Id. 
           The evidence shows that, at 6:00 p.m. on December 3, 2004, appellant went to
an apartment shared by the complainant and Sergent expecting money and a
microphone from Sergent. When appellant arrived, Sergent was not at the apartment. 
The complainant called Sergent at 6:30 p.m. and reminded him that appellant was
there. Sergent told the complainant to tell appellant to “sit tight” and play Sergent’s
videogames. The evidence shows that Sergent and Keller arrived at Sergent’s
apartment at approximately 7:45 p.m. and found the complainant deceased on the
living room floor. Sergent discovered that video games and movies were missing.
Evidence that property was discovered missing at the time the victim’s body was
discovered supports an inference that the murder was committed in the course of the
robbery. See Roberts v. State, 220 S.W.3d 521, 526 (Tex. Crim. App. 2007) (citing
Cooper v. State, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002)). 
           Appellant admitted that he killed the complainant and that, immediately
afterward, he took video games and a console from the complainant’s apartment. The
evidence shows that appellant pawned seven video games, a console, and a boxed set
of DVD movies the day after the incident. The evidence also shows that appellant
purchased a microphone from the pawn shop at the same time. From this evidence,
the jury rationally could have inferred that appellant intended to steal the video games
and console. See Cooper, 67 S.W.3d at 223–24 (reaffirming inference that murder
is committed in course of committing robbery when robbery occurs immediately after
murder); Hart, 89 S.W.3d at 64; McGee, 923 S.W.2d at 608.
           The evidence shows that appellant took the seven video games and boxed set
of DVD movies from the third drawer of a chest in Sergent’s room. Sergent testified
that these items were in the drawer, that the drawer was closed when he went to work
on the morning of the incident, and that the drawer was open when Sergent returned
after the murder. The evidence shows that appellant’s hands were bloody when he
went back to Sergent’s room after the murder. However, the evidence shows that
there was no blood found on the drawer or chest. From this evidence, the jury
rationally could infer that appellant’s intent to steal video games and boxed set of
DVD movies was formed prior to committing the murder. See Hart, 89 S.W.3d at 64;
McGee, 923 S.W.2d at 608.
           Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found beyond a reasonable doubt that appellant
formed the intent to rob the complainant prior to the time he committed the murder.
See Johnson, 23 S.W.3d at 7.
           2.       Appropriation of property of the complainant
           Appellant contends that the State failed to prove that he unlawfully
appropriated property belonging to the complainant because the complainant was not
the owner of the video game equipment. Appellant contends that the property he took
belonged to Sergent. 
           A person commits robbery if, in the course of committing theft, as defined in
Chapter 31, and with intent to obtain or maintain control of property, he intentionally,
knowingly, or recklessly causes bodily injury to another, or intentionally or
knowingly places another in fear of imminent bodily injury or death. See Tex. Pen.
Code Ann. § 29.02(a). A person commits theft “if he unlawfully appropriates
property with intent to deprive the owner of property.” See Tex. Pen. Code Ann.
§ 31.03. 
           The definitional portion of the jury charge provided that “‘[a]ppropriation’ and
‘appropriate,’ as those terms are used herein, mean to acquire or otherwise exercise
control over property other than real property.” In addition, “[a]ppropriation of
property is unlawful if it is without the owner’s effective consent.” The jury was
instructed that “owner” means a person who has title to the property, possession of 
property, or a greater right to possession of the property than the actor. See Tex. Pen.
Code Ann. § 1.07(35) (Vernon Supp. 2006). In addition, “possession” means actual
care, custody, control, or management of the property. See id. § 1.07(39).
           Under the statutory definitions given in the jury charge, the complainant was
the “owner” of the video game equipment if she had a greater right to possession of
the items than appellant. See Threadgill v. State, 146 S.W.3d 654, 663–64 (Tex.
Crim. App. 2004). The evidence shows that the items at issue belonged to her son,
Sergent, and that they were kept in Sergent’s room, in the complainant’s apartment. 
Appellant stated in his statement, that was admitted into evidence, that he “got their
Playstation.”
          Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found beyond a reasonable doubt that the
complainant had a greater right to possess her son’s video games, console, and
movies than did appellant. See Threadgill, 146 S.W.3d at 664. We hold that the
evidence is legally sufficient to support the jury’s verdict. See Johnson, 23 S.W.3d
at 7. 
          Accordingly, we overrule appellant’s third and fifth points of error. 
D.      Factual Sufficiency
          In his fourth and sixth points of error, appellant argues that the evidence is
factually insufficient to support his conviction. Specifically, appellant contends that
the evidence fails to show (1) that he formed the intent to take the video game
equipment before or at the time of the murder, rather than as an afterthought, and (2)
that he appropriated property of the complainant.
          As fully discussed above, the State presented legally sufficient evidence that
appellant formed the intent to rob the complainant prior to the time he committed the
murder.
          Appellant contends that the evidence is factually insufficient to show that he
formed the intent to take the video game equipment and movies before or at the time
of the murder, rather than as an afterthought, because 
[t]he circumstances are as such that a rational jury might have inferred
that the appellant caused the death of the complainant in order to
unlawfully appropriate the video game equipment and DVDs. However,
the circumstances are also as such that it was unlikely that the
complainant would have even noticed, let alone put up any kind of a
struggle, had the appellant merely walked out with the property.
 
          This factor, even if true, does not render the evidence factually insufficient. 
          Appellant also contends that the evidence is factually insufficient to show that
he appropriated property of the complainant. As discussed above, the evidence shows
that the complainant had greater right of possession in the property than did appellant.
See Alexander v. State, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988). No evidence
showed that appellant had any right to possess the stolen items. 
          Viewing all of the evidence in a neutral light, we cannot conclude that the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or that the
verdict is against the great weight and preponderance of the evidence. See Johnson,
23 S.W.3d at 9–10. We hold that the evidence is factually sufficient to support the
jury’s verdict.
          Accordingly, we overrule appellant’s fourth and sixth points of error.
Conclusion
We affirm the judgment of the trial court.
                                                                   
 

 
Laura Carter Higley
Justice

Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).