# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00691-CR

**Ruben Urrutia, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-05-256,, HONORABLE DONALD LEONARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Robert Urrutia appeals his conviction for burglary of a habitation with intent to commit an assault. *See* Tex. Pen. Code Ann. § 30.02(a)(1) (West 2003). After the jury found appellant guilty, the trial court found that appellant had previously been convicted of a felony as alleged and assessed punishment at thirty years' imprisonment. *See* Tex. Pen. Code Ann. § 12.42(3)(b) (West Supp. 2005).[1]

### Points of Error

Appellant advances three points of error. In the first two, he challenges the legal and factual sufficiency of the evidence to show that entry into the habitation was made with the intent

---

[1] The enhancement of punishment raised the offense alleged from a second degree felony to a first degree felony for the purpose of punishment. The current code is cited for convenience.

to commit an assault. In the third point of error, appellant contends that the prior felony conviction could not have been validly used to enhance punishment because the judgment in the prior conviction did not assess punishment, which appellant refers to as a "sentence."

**Background**

The record shows that appellant Urrutia and Rebecca Arroyo had lived together for four years and had a three-year-old daughter. The record is not clear as to when or why they separated, but on the date of offense they were living apart. Arroyo was staying with her aunt, Juana Urrutia, the widow of appellant's brother.

On March 16, 2005, about 7 a.m., appellant telephoned Arroyo. They argued and Arroyo "hung up" the telephone several times. At approximately 7:30 a.m., appellant arrived at the home of Juana Urrutia. He appeared to have been drinking. Appellant wanted to take his three-year-old daughter to his dwelling for a visit. Arroyo refused, explaining that the child had been sick, and the weather was cold and rainy. They argued and appellant pulled Arroyo's hair. Juana Urrutia was awakened by the argument. She heard appellant complaining that Arroyo "always wants her way." Arroyo responded that appellant was "acting stupid." Juana spoke to both parties, and she agreed that it was too cold and rainy to take the ill child out into the weather. She asked appellant to leave her house. Appellant left saying that he would be back and would show them "how stupid he could be."

Later in the morning, appellant returned to the house, knocked on the door and banged on the windows. He did not come into the house. Arroyo made her first 911 telephone call at this time. Officer Babiser responded to the call but appellant was no longer at the residence. The officer

2

unsuccessfully searched for appellant's pickup truck which had been described to him. Arroyo was instructed to call 911 again if appellant returned to the residence.

Around 11:10 a.m. that morning, appellant returned to the house. Arroyo saw him arrive and called 911. Appellant did not come to the open door of the residence, but took a lead pipe from his pick-up truck and smashed the windows on Arroyo's car. Arroyo screamed at him as she spoke with the 911 operator. Appellant walked toward the house, but turned, walked to his truck and placed the lead pipe in the bed of the vehicle. Arroyo closed and locked the door. Instead of leaving, appellant came to the doorway. Juana Urrutia raced with a chair to reinforce the front door. Before she could get to the door, appellant kicked in the door, entered the residence and began arguing with Arroyo. The argument was recorded on the 911 tape. Arroyo testified that appellant knocked the phone out of her hand. Juana got between the yelling couple, trying to calm appellant. Arroyo stated that appellant said that "he was tired of her" and "wasn't going to put up with her anymore."

Juana Urrutia testified that she did not know what appellant was going to do, but he looked like he wanted to "grab" Arroyo. She related that appellant told Arroyo that she "was going to get it," and made signs with his hands under his throat like a knife and other signs like shooting a gun. Juana agreed that appellant did not push her out of the way or actually assault Arroyo. Arroyo said that appellant never laid his hands on her.

When the police officers arrived, appellant was standing in the doorway. He was reluctant to leave but soon submitted to custody. The police took photographs of the broken door frame and the shattered windows of the car, and recovered the lead pipe from appellant's truck. No other weapons were found.

3

Appellant offered no evidence and rested with the State.

## Legal Sufficiency

In his first point of error, appellant challenges the legal sufficiency of the evidence to sustain his conviction. In determining whether the evidence is legally sufficient to support a judgment of conviction, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The evidence viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in this review. The reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Thomas v.* State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988); *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). The standard of review is the same for both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

The jury as the trier of fact is the judge of the credibility of the witnesses and the weight to be given their testimony, and may accept or reject all or any part of any witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The evidence is not rendered insufficient because the defendant presented a different version of the events. *Turro v. State*, 867 S.W.2d 43, 47-48 (Tex. Crim. App. 1993).

Appellant was charged under penal code section 30.02(a)(1).  This statute provides:

> A person commits an offense if, without the effective consent of the owner, the person (1) enters a habitation, or a building (or any portion of a building not then open to the public), with intent to commit a felony, theft, or an assault;

Tex. Pen. Code Ann. 30.02(a)(1) (West 2003).[2]  The elements of the burglary offense alleged in this case are:  (1) entry into a habitation; (2) without the effective consent of the owner; and (3) with intent to commit an assault.  Appellant concedes the evidence is legally sufficient to support the first two elements of the charged offense, but challenges the legal evidentiary sufficiency underlying the third element — "with intent to commit assault."

> A person commits assault if he:
>
> (1)  intentionally, knowingly, or recklessly causes bodily injury to another including the person's spouse;
>
> (2)  intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Pen. Code Ann. § 22.01 (West Supp. 2005).[3]

---

[2]  In 1999 "or an assault" was added to section 30.02(a)(1).  *See* Act of May 26, 1999, 76th Leg., R.S., ch. 727, § 1, 1999 Tex. Gen. Laws 3336.  Formerly, the statute only referred to "with intent to commit a felony or theft."  *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3633.

[3]  The current code is cited for convenience.  Appellant informs us that the third manner of committing an assault was omitted from the jury charge by agreement of the parties.

5

Intent, as an essential element of burglary, must be proved by the State beyond a reasonable doubt and may not be left simply to speculation and surmise. *See McGee v. State*, 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.). The gist of burglary is entry with the requisite intent. *Alexander v. State*, 873 S.W.2d 793, 795 (Tex. App.—Beaumont 1994, pet. ref'd). Intent to commit a felony, theft, or an assault must exist at the time of the entry or there is no offense under section 30.02(a)(1). *See DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988); *In Re J.L.H.*, 58 S.W.3d 242, 249 (Tex. App.—El Paso 2001, no pet.); *Moore v. State*, 54 S.W.3d 529, 539 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986). Once the unlawful entry is made with the requisite intent, the crime is completed regardless of whether the intended felony theft, or an assault is attempted or occurs. *Jacob v. State*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995); *Ford v. State*, 632 S.W.2d 151, 153 (Tex. Crim. App. 1982); *Moore*, 54 S.W.3d at 538; *Williams v. State*, 997 S.W.2d 415, 418 (Tex. App.—Beaumont 1999, no pet.); *Rodriguez v. State*, 793 S.W.2d 744, 745 (Tex. App.—San Antonio 1990, no pet.).

The jury is exclusively empowered to determine the issue of intent in a burglary trial. *McGee*, 923 S.W.2d at 608. Thus, intent as alleged is a fact issue for the jury. *Moore*, 54 S.W.3d at 539. Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). Since mental culpability is of such a nature that it must be inferred from circumstances under which the prohibited act occurred, the trier of fact may infer intent from any facts in evidence which tend to prove the existence of such intent. *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd). In fact, the jury may infer intent

from the acts, words, and conduct of the accused, *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1985); *Moore*, 54 S.W.3d at 539, and all circumstances surrounding the acts and conduct engaged in by the accused. *See Panamore v. State*, 853 S.W.2d 741, 745 (Tex. App.—Corpus Christi 1993, pet. ref'd). The fact of breaking and entering a habitation or building is always strong evidence of some bad or evil intent in a prosecution for burglary. *See Perkins v. State*, 489 S.W.2d 917, 919 (Tex. Crim. App. 1973); *Greer v. State*, 437 S.W.2d 558, 560 (Tex. Crim. App. 1969).

Appellant stresses that the evidence shows that he committed no assault after he broke and entered the home of Juana Urrutia. As earlier observed, the actual commission of an assault is not a prerequisite to the commission of a burglary as alleged here. *Jacob*, 892 S.W.2d at 909; *Moore*, 54 S.W.2d at 538; *Gutierrez v. State*, 666 S.W.2d 248, 250 (Tex. App.—Dallas 1984, pet. ref'd). The State was not required to prove the elements of an assault offense under section 22.01 of the penal code.

The evidence shows that appellant argued with Rebecca Arroyo over the telephone on the morning in question. Shortly after that he appeared at Juana Urrutia's home and continued his argument with Arroyo and pulled her hair. Although the argument centered on Arroyo's refusal to let appellant take their sick daughter for a visit, the argument appeared broader. Juana Urrutia told appellant to leave her home. Later in the morning, appellant returned, knocked on the door and "banged" on the window causing Arroyo to call 911. Still later that morning, appellant made another visit to the Urrutia home. This time he brought a lead pipe and broke out the windows in Arroyo's car. Appellant then kicked in the locked door of the Urrutia's house while Arroyo was again calling 911. The telephone was knocked from Arroyo's hand, although she may have "hung up" before he

7

did so.  Appellant accosted Arroyo and Juana Urrutia stepped between them.  She related that appellant appeared to grab for Arroyo and made hand signs indicating a knife cutting a throat and then shooting a gun.  Juana reported that appellant told Arroyo that he was going to get Arroyo. There was also testimony appellant told Arroyo that he was "tired of her" and "was not going to put up with her anymore."

Appellant offered no evidence, but argues that he had not assaulted anyone, and that at the time he had no weapons on his person.  It is the exclusive provence of the jury to reconcile any conflict in the evidence.  *Westbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

We conclude, viewing the evidence in the light most favorable to the jury's verdict, that any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the burglary charged including the element of "with intent to commit an assault."[4]

### Factual Sufficiency

For the same reasons articulated above, appellant contends that the evidence is factually insufficient to support the jury's verdict.  A factual sufficiency review begins with the presumption that the evidence supporting the conviction was legally sufficient. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  To determine if the evidence is factually sufficient, we must review the evidence in a neutral light and resolve whether evidence supporting guilt is so weak that the verdict is clearly wrong and manifestly unjust or whether the evidence contrary to the

---

[4] In *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), the court held that in a sufficiency review, the jury's inference of intent is afforded more deference than the evidence supporting proof of conduct.

verdict is so strong that the burden of proof has not been met. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). In applying this test, we consider all the evidence, rightly or wrongly admitted. *Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). Appellate courts should be on guard not to substitute their own judgments in these matters for that of the trier of fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997), but a reviewing court may disagree with the result to prevent a manifest injustice. *Johnson v. State*, 23 S.W.2d 1, 9 (Tex. Crim. App. 2000).

Without reiterating the evidence and applying the *Zuniga* holding, we find no merit in appellant's claim of factual insufficiency concerning the intent to commit an assault. Giving the jury's verdict its due deference, and viewed in a neutral light, the proof of guilt is not weak and the verdict is not unjust, nor is the evidence contrary to the verdict so strong as to prevent the application of the proper burden of proof. *Zuniga*, 144 S.W.3d at 484. The second point of error is overruled.

In his third point of error, appellant contends that the "evidence is insufficient [at the penalty stage of the trial] to prove an enhancement count[5] because the certified original of the judgment lacked a sentence and called into question documents from T.D.C.J. [Texas Department of Criminal Justice] which showed that 'sentence' was later written in by someone other than the

---

[5] Allegations of prior convictions for the enhancement of punishment are not separate "counts." A "count" is an allegation charging a distinct offense. *Square v. State*, 167 S.W.2d 192, 193-94 (Tex. Crim. App. 1942); *see also Tomlin v. State*, 722 S.W.2d 702, 706-07 (Tex. Crim. App. 1987) (concurring op.); *Branch v. State*, 445 S.W.2d 756, 760 (Tex. Crim. App. 1969); *Steward v. State*, 422 S.W.2d 733, 735 n.1 (Tex. Crim. App. 1968); *Beck v. State*, 420 S.W.2d 725, 727 n.1 (Tex. Crim. App. 1967); *Pitts v. State*, 742 S.W.2d 420, 422 n.1 (Tex. App.—Dallas 1987, no pet.).

trial judge." Appellant apparently uses "sentence" as synonymous with assessment of penalty or punishment itself.

The State responds that there was no trial objection by appellant and any error was waived for the purposes of appeal. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). A claim regarding the sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so. *Rankin v. State*, 46 S.W.2d 899, 901 (Tex. Crim. App. 2001); *Proctor v. State*, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998). Appellant's challenge to the legal sufficiency of the evidence regarding the prior conviction used for enhancement is properly before us for review.

The burglary indictment alleged three prior felony convictions for enhancement of punishment. Enhancement paragraph I alleged two prior convictions, which occurred on the same date (January 22, 1987), only one of which could be used to establish a habitual criminal status because of the sequential requirements of section 12.42(d). Tex. Pen. Code Ann. 12.42(d) (West Supp. 2005). The first of these two prior convictions was for the felony offense of aggravated assault in cause no. CR-86-310 in the 22nd Judicial District Court of Hays County. The second prior felony conviction alleged in the same paragraph was for possession of a prohibited weapon in cause no. CR-86-317 in the 22nd Judicial District Court of Hays County.[6]

Enhancement paragraph II of the indictment alleged a prior felony conviction for delivery of a controlled substance occurring on October 21, 1988, in cause no. 89-06-0889 in the

---

[6] It would have been better practice to have alleged each prior conviction in a separate enhancement paragraph of the indictment, even if one conviction is alleged as a spare in the event of the failure of proof of the other conviction or convictions.

District Court of Guadalupe County.  The enhancement allegations made clear that the State sought to punish appellant as a habitual criminal.

At the penalty stage of the trial, appellant entered a plea of "not true" to the enhancement allegations.  The State was unable to prove the prior conviction alleged in enhancement paragraph II.  The fingerprint expert was unable to match appellant's known fingerprints with those in the pen packet relating to that conviction.  Further, because of some apparent problems with documents, the trial court declined to assess a habitual criminal penalty based "on that kind of messed-up deal."

The State offered the certified pen packet pertaining to both convictions alleged in enhancement paragraph I, evidence of matching fingerprints, and the certified judgments of conviction from the district clerk of Hays County, in order to prove the validity of the convictions.  Two prior misdemeanor convictions were also shown as a part of appellant's criminal record.

At the conclusion of the penalty stage, the trial court announced that the punishment would be enhanced "from the second degree to a first degree" and fixed the penalty at thirty years' imprisonment.  *See* Tex. Pen. Code Ann. § 12.42(3)(b) (West Supp. 2005).[7]

It is obvious that the trial court used only one of the prior convictions alleged in enhancement paragraph I, but it did not designate which one.  The parties did not seek clarification.  The recital in the judgment simply reflects that the trial court found as "true" the allegations of

---

[7] This statute provides: "If it be shown on the trial of a second degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a first degree felony."  The prior conviction must be a "final" one. *See Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001).

enhancement paragraph I, which contained allegations as to two prior convictions. The judgment did not rectify the confusion.

Appellant in his evidentiary challenge takes no note of this situation, but claims that the prior conviction (unidentified) used for enhancement was not properly proven. Normally, it would matter as to which prior conviction was used. Here, however, the evidence relating to both convictions suffer from the same imperfections claimed by appellant. We shall assume for our disposition of this cause that the trial court utilized the first prior conviction alleged for aggravated assault.

The State has the burden of proof beyond a reasonable doubt to establish prior convictions alleged for enhancement of punishment. *Sanders v. State*, 69 S.W.3d 690, 693 (Tex. App.—Texarkana 2002, pet. dism'd, untimely filed); *Williams v. State*, 899 S.W.2d 13, 14 (Tex. App.—San Antonio 1995, no pet.) (citing *Ex parte Augusta*, 639 S.W.2d 481 (Tex. Crim. App. 1981)). This burden includes demonstrating that any prior conviction is final. *Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001).

We shall examine the evidence at the penalty stage of the trial. As noted, the State introduced the pen packet (State's exhibit 7) relating to both prior convictions alleged in enhancement paragraph I. The pen packet contained certified copies of the judgments in each conviction reflecting concurrent sentences of two years' imprisonment in each case. These judgments also reflected that punishment was assessed in each case in accordance with a plea bargain agreement. The pen packet regarding these 1987 convictions included appellant's inmate number, his photograph and a copy of his fingerprints taken at the prison system. These fingerprints were

12

matched with his known fingerprints. The State also introduced copies of the same judgments certified by the district clerk of Hays County (State's exhibits 21 and 22). These exhibits also included a commitment order in each case reflecting appellant was imprisoned in the Texas Department of Corrections "for a term of (2) two to run concurrently" with the other numbered cause. The word "years" is missing in the commitment orders. In State's exhibit 21 relating to the prior conviction for aggravated assault (cause no. CR-86-310) there is a certified copy of a written plea bargain agreement "for 2 years" "to run concurrently with CR-86-317" signed by appellant and his trial counsel.

From this evidence, appellant argues there is a question as to the punishment assessed. Appellant urges that the copies of the judgments certified by the district clerk fail to reflect that any punishment was assessed in either case. The form of judgment used in each case required certain recitals to precede the body of the judgment itself. In the judgment form used, the recitals were to be entered in certain designated brackets such as "Date of Judgment," "Judge Presiding," "Plea," etc. In the bracket designated "Punishment and Place of Confinement" in each judgment, the typed phrase "Texas Dept. of Corrections" appears without any indication of the term assessed. The body of each judgment which should control furnishes no aid. They merely reflect "and the defendant is punished in accordance with the terms set forth above."[8]

---

[8] The body of each judgment contains other references such as "on this day set forth above," "defendant appeared with above named attorney," "was arraigned on the offense shown above, and entered a plea as shown above," and "the defendant is found guilty of the offense as set forth above, and which offense was committed on the date shown above." The body of these judgments do not themselves set out the requisites of a judgment. *See* Tex. Code Crim. Proc. Ann. art. 42.01 (West Supp. 2005). All reliance is on the preliminary recitals, like all eggs in one basket. The form of the body of a judgment as used here becomes a "rubber stamp" available for use in any case and under

Appellant acknowledges that the certified copies of the judgments in the pen packet (State's exhibit 17) contain in the recitals and in the appropriate bracket for punishment the handwritten "2 years T.W." Appellant claims this interlineation in ink is in conflict with the copies of same judgment certified by the district clerk which in the appropriate brackets do not assess a punishment. Appellant contends that the record does not show who "T.W." was, but it was not the trial judge.[9] He urges that if the regularity of the judgments was established by the introduction of the pen packet, the State unraveled the presumption of regularity by its introduction of other copies of the judgments certified by the district clerk. Appellant concedes that the commitments in evidence purport to show a term of two year's confinement in each case, and that a commitment may be evidence of a "sentence" because it is generally presumed that a commitment is based on a proper judgment. *See Lambert v. State*, 779 S.W.2d 512, 513 (Tex. App.—Austin 1989, no pet.). But appellant urges that this presumption only arises in the absence of a showing to the contrary. *Id*. Appellant urges that the contrary has been shown here. We observe that there was no objection to the admissibility of any of the evidence on the grounds now urged. There is only appellant's challenge to the sufficiency of the evidence to prove the prior felony convictions, or at least one of them.

The standard of review for legal sufficiency challenges at the punishment stage is the same as discussed in the first point of error, except that here the trial court was the judge of the credibility of the witnesses and the weight to be given the evidence. *See Sharp*, 707 S.W.2d at 614.

---

any circumstances.

[9] No one advances the thought that "T.W." was an attempt to write the word "two."

The trial court may accept or reject any of the evidence presented, and may resolve, as the trier of fact, all conflicts in the evidence. *See Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd). Moreover, this Court must consider all evidence admitted which the trier of fact was permitted to consider. *Dewberry*, 4 S.W.3d at 740.

In viewing *all* the evidence at the penalty stage of the trial in the light most favorable to the judgment in the instant case, we conclude that any rational trier of fact could have found beyond a reasonable doubt that the prior felony conviction for aggravated assault alleged for enhancement of punishment was a final conviction assessing two (2) years' imprisonment as the penalty.[10]

Despite the stated point of error, some of appellant's argument attempts to make a collateral attack upon the two prior felony convictions discussed as being void because of the discrepancies in the exhibits. A prior conviction that is alleged in a later offense for enhancement of punishment may be attacked if it is void or if it is tainted by a constitutional defect. *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim App. 1978); *Wilson v. State*, 44 S.W.3d 602, 605 (Tex. App.—Fort Worth 2001, pet. ref'd). An appellant who poses a collateral attack on an agreed prior conviction has the burden to show that the prior conviction is void and not merely voidable. *See Preston v. State*, 667 S.W.2d 331, 333-34 (Tex. App.—Corpus Christi 1984, no pet.) (citing *Ex parte Guzman*, 589 S.W.2d 461 (Tex. Crim. App. 1979)). An error in the judgment or sentence which is

---

[10] Although not evidence, we observe that appellant's trial counsel told the trial court in argument at the conclusion of the penalty stage that both prior felony conviction sentences "are for two years, the minimum punishment that was applicable in there." The prosecutor likewise told the trial court in argument that "he [appellant] got two years in that case" (the prior aggravated assault conviction).

subject to reformation does not render the prior conviction alleged void, and it is not susceptible to collateral attack and will not vitiate the use of the conviction for enhancement purposes. *Preston*, 667 S.W.2d at 333-34; *see also Barnes v. State*, 635 S.W.2d 139, 142 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (citing *Bowles v. State*, 550 S.W.2d 84, 87 (Tex. Crim. App. 1977). Thus, infirmities in a prior conviction, such as insufficiency of the evidence or irregularities in the judgment and sentence, may not be raised by collateral attack. *See Galloway*, 578 S.W.2d at 143.

Appellant's reliance upon *McGinnis v. State*, 746 S.W.2d 479 (Tex. Crim. App. 1988), is misplaced. *McGinnis* is distinguishable on the facts and the law. The prosecution in *McGinnis* was under a former version of section 31.03 of the penal code providing that theft is a felony of the third degree if the value of the property is less than $750 and the accused has been previously convicted two or more times of any grade of theft.[11] The prior misdemeanor theft convictions alleged in *McGinnis* were jurisdictional elements of the third degree felony, and were not allegations for enhancement of punishment. *See Lackey v. State*, 881 S.W.2d 412, 418 (Tex. App.—Dallas 1994, pet. ref'd) (citing *Gant v. State*, 606 S.W.2d 867, 869 n.2, 871 n.9 (Tex. Crim. App. 1980)). In *McGinnis*, the State, in attempting to prove the two prior misdemeanor theft convictions for jurisdictional purposes, offered certified copies of the judgment and sentence in one of the convictions, making a prima facie showing of the validity of the conviction. This showing was undone by the State's introduction of a certified copy of the information underlying the prior conviction which was essentially blank in pertinent parts. The *McGinnis* court held that the State

---

[11] *See* Act of May 29, 1983, 68th Leg., R.S. ch. 558, 1983 Tex. Gen. Laws 3237, 3244, since amended. The current code provides for a similar offense as a state jail felony. *See* Tex. Pen. Code Ann. § 31.03(e)(4)(D) (West Supp. 2005).

16

failed to sustain its burden of proof as to the third degree felony before the court on appeal. *Id*. 746 S.W.2d 482. The third point of error is overruled.

All of appellant's contentions having been overruled, the judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion*

Affirmed

Filed: June 16, 2006

Do Not Publish

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).