Opinion issued May 29, 2008













     




In The
Court of Appeals
For The
First District of Texas




NO. 01–07–00666–CR




JOSE VASQUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1075290




MEMORANDUM OPINION

          Appellant, Jose Vasquez, was charged by indictment with having tampered
with a governmental record, namely, by filing a false mechanic’s lien foreclosure,
with intent to defraud.


 Appellant pleaded not guilty, but stipulated to three prior
convictions for felony theft and to one prior conviction for the misdemeanor offense
of unlawful restraint. The jury found appellant guilty and assessed punishment at
confinement for seven years and a fine of $8,900. 
          In two issues, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction.
          We affirm.
Background
          On July 21, 2005, Ira Green purchased a new Chevrolet Silverado pickup truck
to use in his courier business. As part of his business, Green regularly made
deliveries to Houston’s Hobby Airport. When he finished his trips to Hobby, he
routinely stopped at a nearby Shell gas station for refreshment.
          At around 1:00 p.m. on the afternoon of August 2, 2005, Green finished a
delivery to Hobby and stopped at the Shell station. Green parked outside the front
doors of the store, and, because it was hot outside, he left the engine running while
he ran inside the gas station long enough to use the restroom and buy some water. 
Green also left the truck unlocked. When Green returned, the truck was gone. 
          Green panicked and asked other patrons what they had seen. An unidentified
witness said that he saw a man walk over from the adjacent hotel, jump into the truck,
and drive away. The witness said that he saw the man stop back at the hotel
momentarily, pick up a woman and another man, and drive away again. Green tried
unsuccessfully to pay one of the patrons to drive him in the direction the witness
reported.
          Green then saw Officer M. Vanya of the Houston Police Department (“HPD”)
parked at the hotel and flagged her down. Officer Vanya and Green went back to the
Shell station, where Officer Vanya took Green’s statement and tried unsuccessfully
to find a witness. Officer Vanya testified that the truck could not have gotten very
far in the very short time that had passed and that she reported the theft to area patrol
units. Officer Vanya searched the area, but there was no sign of the truck. She was
concerned that locating the truck could be difficult because it was new and only had
a paper license tag. Green called his wife to pick him up and called his insurer,
Progressive Casualty Insurance Company (“Progressive”).
 
          On September 12, 2005, the truck was still unrecovered, and Progressive paid
$22,000 to Green’s lender, Capital One Auto Finance, to pay off the note on the truck. 
Brent Walker, an investigator for Progressive, testified that normally when
Progressive pays off an unrecovered stolen vehicle it will have the vehicle title
transferred into Progressive’s name. In this case, however, it was not until five
months later, in February of 2006, that Progressive began the paperwork to change
the title on Green’s truck. On March 13, 2006, the title was changed to reflect that
Progressive was the registered owner.
          On or about March 30, 2006, HPD Officer E. Blankenship, who had been
assigned to investigate the theft, received a call from appellant. Appellant reported
that he had attempted to renew the temporary license plates on a truck in his
possession and had learned that the truck had been reported stolen. Officer
Blankenship testified that appellant told him that a person named Ira Green had
dropped the truck off at his automotive repair shop for engine work because it had
become damaged after being driven over railroad tracks. Appellant reported that he
had rebuilt and reinstalled the engine, that $6,900 was owed on the vehicle for these
repairs, and that he was in the process of filing a mechanic’s lien. Appellant provided
the vehicle identification number, and Officer Blankenship determined that the
number matched that of the truck that had been stolen from Green. Officer
Blankenship did not make arrangements to seize the truck; rather, he told appellant
that he would get back with him in a few days.
          On April 7, 2006, Officer Blankenship contacted Progressive, explained that
appellant was in possession of the truck, gave Progressive appellant’s contact
information, and told Progressive to go and recover the truck. In addition, Officer
Blankenship called appellant and said that he was leaving the truck in appellant’s
possession, that he had contacted Progressive, and that they would contact him. 
Officer Blankenship also explained that, before he could take the “stolen hit” off of
the truck, a police officer would need to come by and verify the vehicle identification
number. Officer Blankenship told appellant to leave the truck parked out in front of
his house and that an officer would come by. Appellant complied. After an officer
verified that the vehicle identification number matched that of the truck reported
stolen by Green, Officer Blankenship inactivated the case. Officer Blankenship
testified that he thought Progressive would go pick up the truck and would pay
appellant the money that was owed for repairs. 
          Walker, of Progressive, confirmed that appellant had contacted Progressive at
some point in March, after the truck was registered to Progressive, and that appellant
had said that he was owed money for repairs. Walker testified that, on April 13,
2006, Progressive received a notice of intent to file a mechanic’s lien from appellant
and that Progressive had 30 days to respond, but that it did not. 
          On or about May 15, 2006, Officer Blankenship learned that, as a matter of
proper procedure, he was supposed to have seized the truck immediately and held it
for a property hearing. Officer Blankenship contacted appellant and explained that
he would need to take possession of the truck. Officer Blankenship testified that, in
the days that followed, he called appellant repeatedly and that appellant either
avoided his calls or told him that he was too busy to meet. On May 18, 2006,
appellant told Officer Blankenship that the truck was in the Rio Grande Valley being
driven by appellant’s parents and that the truck was registered in his name. Officer
Blankenship checked the computer and determined that the truck had indeed been
registered to appellant. Officer Blankenship explained to appellant that registration
does not constitute legal ownership of the truck and that HPD was required to hold
a property hearing to determine the rightful ownership of the truck. Officer
Blankenship testified that, during the three weeks that followed, he made repeated
attempts to recover the truck and that appellant would avoid his calls or would
promise to make the truck available but would fail to follow through.
          On June 21, 2006, Officer Blankenship learned from Walker at Progressive that
the truck had been listed in inventory at Strickland Chevrolet in Pearland. Officer
Blankenship contacted the dealership, told them the truck was involved in an ongoing
police investigation, and asked them to hold it. The used car sales manager, Todd
Harvey, testified that appellant had sold the truck to the dealership for $14,000, that
appellant had presented clear title, and that the dealership would not hold the truck
without an HPD case number. At this point in time, the truck had not been re-listed
as stolen.
          On June 22, 2006, Officer Blankenship received the title history and copies of
the filings on the truck from the Texas Department of Transportation (“TxDOT”). 
Officer Blankenship learned that, on May 12, 2006, appellant had filed an
“Application for Texas Certificate of Title.” To his application, appellant appended
a Texas state form for “Mechanic’s Lien Foreclosure,” on which appellant, under
sworn affidavit, stated that the name of person who left the vehicle for repairs was
“Progressive Casualty Ins.” In addition, appellant attested, “Engine was Rebuilt and
Reinstalled” and the charges owed for the parts and labor was “6,800.” Effective
May 12, 2006, the title had been changed to reflect that appellant was the registered
owner.
          Officer Blankenship noted that the Mechanic’s Lien Foreclosure required that 
a copy of the work order supporting the lien, if available, be attached to the form. 
Appellant attached an invoice reflecting that, on July 28, 2005, the truck had been left
for repairs at appellant’s place of business, Supreme Performance Automotive
(“Supreme”), by “Ira Green” to “R & R Engine,” which Officer Blankenship
understood to indicate “rebuild and replace.” The invoice reflected a total sum due
of $5,542.94 plus storage. A signature of Ira Green appeared on the invoice.
          On June 27, 2006, Officer Blankenship met with Green and took a written
statement, which Green signed. Officer Blankenship compared Green’s signature on
the statement against the signature on appellant’s invoice and concluded that they
were “very, very close” and “nearly identical.” Officer Blankenship questioned
Green about the invoice. 
          Green attested, as he later testified at trial, that he had never been to Supreme
and that the resemblance between the signatures could be easily explained by the fact
that inside the truck on the day it was stolen were numerous documents related to his
courier business that bore his signature. Green testified that his signature easily could
be copied. In addition, Green testified that, even if he had somehow damaged his
truck, which would have been only seven days old on the day appellant claims it was
presented for repairs, he would have returned it to the dealer for those repairs to
prevent voiding the warranty. Further, Green testified concerning the details of the
courier runs that he had made in his truck on July 27th and 28th, and Green produced
toll records showing that the toll tag registered to Green’s truck had passed through
toll booths numerous times during that period. Green further testified that the truck
could not have been sitting at a repair shop with its engine in pieces on the day it was
stolen, which was August 2, 2005. Appellant reported on his “Mechanic’s Lien
Foreclosure” that he did not complete the work on the truck until August 10, 2005.
          Officer Blankenship contacted the assistant district attorney, re-listed the truck
as stolen, issued a warrant for appellant’s arrest, and recovered the truck from
Strickland Chevrolet. Officer Blankenship then had two certified mechanics put the
truck on a lift and inspect it to see if the work listed on the invoice actually appeared
to have been performed. The mechanics concluded that it did not appear that the
work listed had been done.
          Jimmy Jones, an investigator for the Harris County District Attorney’s Office,
testified that he visited Supreme, that the address is appellant’s residence, that there
does not appear to be an automotive shop on the premises, and that this residence is
located approximately two miles from the Shell station from which Green’s truck was
stolen.
           Sufficiency of the Evidence
          In his first and second issues, appellant contends that the evidence was legally
and factually insufficient to support his conviction for tampering with a governmental
record.
 
 
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Parker v. State, 192 S.W.3d 801,
804 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). Although our analysis
considers all of the evidence presented at trial, we may not re-weigh the evidence and
substitute our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000). 
          We begin the factual-sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). In conducting a factual-sufficiency review, we view all
of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997). We will set the verdict aside only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App.
2000)). Under the first prong of Johnson, we cannot conclude that “a conviction is
‘clearly wrong’ or ‘manifestly unjust’ simply because, on the quantum of evidence
admitted, [we] would have voted to acquit had [we] been on the jury.” Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). We must accord “due
deference” to the fact finder, who is in the best position to evaluate the credibility and
demeanor of witnesses. Marshall, 210 S.W.3d at 625. Under the second prong of
Johnson, we cannot “declare that a conflict in the evidence justifies a new trial simply
because [we] disagree with the jury’s resolution of that conflict.” Watson, 204 S.W.3d
at 417. Before ruling that evidence is factually insufficient to support a verdict under
the second prong, we must be able to say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the jury’s verdict. Id.
          In conducting our review, we must address the evidence that appellant claims
most undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003). 
B.      Applicable Law
          Texas Penal Code section 37.10 provides, in relevant part, that a person
commits the offense of tampering with a governmental record if he “makes, presents,
or uses a governmental record with knowledge of its falsity.” See Tex. Penal Code
Ann. § 37.10(a)(5). If it is shown that the governmental record is a title issued by the
government and that the actor intended to defraud or harm another, the offense is a
second degree felony.


 A governmental record includes, inter alia, “anything
belonging to, received by, or kept by government for information,” “anything
required by law to be kept by others for information of government,” and a title or
similar document issued by the government. See Tex. Penal Code Ann.
§ 37.01(2)(A)–(C) (Vernon Supp. 2007).
          A person acts intentionally with respect to the nature of his conduct or to a
result of his conduct when it is his conscious objective or desire to engage in the
conduct or to cause the result. Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). A
jury may infer intent from a defendant’s acts, words, and conduct. Hart v. State, 89
S.W.3d 61, 64 (Tex. Crim. App. 2002); McGee v. State, 923 S.W.2d 605, 608 (Tex.
App.—Houston [1st Dist.] 1995, no pet.). A person acts knowingly with respect to
the nature of his conduct or to circumstances surrounding his conduct when he is
aware of the nature of his conduct or that circumstances exist. Tex. Penal Code
Ann. § 6.03(b). A person acts knowingly with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to cause the result. Id.
 
 C.       Legal Sufficiency
           The State charged that appellant “use[d] or present[ed] a governmental record,
namely, a mechanic’s lien foreclosure, with knowledge of its falsity” and “with intent
to defraud another.” Specifically, appellant contends that “the evidence of intent was
not proven by the State.”
           First, the record shows that the State presented evidence that appellant 
knowingly used or presented a governmental record, namely, a mechanic’s lien
foreclosure, with knowledge of its falsity. The record shows that, on May 12, 2006,
appellant presented to the Texas Department of Transportation an “Application for
Texas Certificate of Title.” Appellant appended, in support of his application for
Texas title, a state application for “Mechanic’s Lien Foreclosure.” A State of Texas
application for a “Mechanic’s Lien Foreclosure” is a governmental record because it
is “received by, or kept by [the] government for information.” See Tex. Penal Code
Ann. § 37.01(2)(A); State v. Vasilas, 187 S.W.3d 486, 490–91 (Tex. Crim. App.
2006) (explaining that even though document is not governmental record at time 
record is prepared, it becomes governmental record when delivered to governmental
body and used); Pokladnik v. State, 876 S.W.2d 525, 527 (Tex. App.—Dallas 1994,
no pet.) (explaining that mechanic’s lien foreclosure does not become governmental
record unless and until it is filed) (citing Constructors Unlimited Inc. v. State, 717
S.W.2d 169, 173–74 (Tex. App.—Houston [1st Dist.] 1986, pet. ref’d)).
           The “Mechanic’s Lien Foreclosure” form required appellant to state the vehicle
information, the name of the person who left the vehicle for repairs, the date the
vehicle was left, the date the work was completed, the type of work performed, and
the charges for parts and labor. By sworn affidavit contained in the form, appellant
attested that the vehicle was left for repairs on July 28, 2005 and that the “Name of
person that left vehicle for repairs” was “Progressive Casualty Ins.” The record
shows, however, that Walker, of Progressive, testified that Progressive did not leave
the truck with appellant for repairs at any time. Indeed, Green had just purchased the
truck days before, on July 21, 2005, and Green reported the truck stolen on August
2, 2005. There is no evidence in the record to support that Progressive dropped the
truck off to appellant for repairs.
           In addition, the form states that the applicant must attach the work order for
which he was not paid, if it is available. Appellant attached a work order on which
he listed Ira Green as the person who dropped off the truck and who, by signature,
authorized the repairs at issue.
           Furthermore, the form required that appellant attest that he had given 30 days
notice of the unpaid charges by certified mail to all owners and lienholders. 
Appellant appended to the form a copy of the notice letter he wrote to Progressive,
in which he stated that the truck was “brought in for repairs on July 28, 2005 by Mr.
Green.” 
           From this evidence, the jury could have rationally concluded that appellant
presented a “Mechanic’s Lien Foreclosure” form to the Texas Department of
Transportation, which became a governmental record upon filing, and used the form 
to support his application for a Texas certificate of title, with knowledge that he had
falsely listed Progressive as the party that had dropped off the truck for repairs on
July 28, 2005. See Tex. Penal Code Ann. § 37.10(a)(5) (stating that person commits
offense if he “makes, presents, or uses a governmental record with knowledge of its
falsity”); Johnson, 23 S.W.3d at 7; Parker, 192 S.W.3d at 804.
           Next, the State presented evidence that appellant acted “with intent to defraud
another.”
          Appellant attested on the “Mechanic’s Lien Foreclosure” form that the “Engine
was Rebuilt and Reinstalled” and that the charges for parts and labor totaled
“6,800.00.” Appellant’s invoice reflects that he charged for the following parts: (1)
oil pan, $ 275.00; (2) oil filter, $20.00; (3) six quarts of oil, $20.00; (4) five pounds
of Freon, $100.00; (5) coolant, $30.00; and (6) a rebuilt engine, $3,500. Appellant
charged $900 for labor to “R & R Engine.” The invoice reflects a total sum due of
$5,542.94 plus storage. 
          The jury heard extensive testimony from two certified mechanics, Wayne
Lynch and Lionel Medina, of Allen Samuels Chevrolet. Lynch testified that the
notation “R & R” means to “remove and reinstall.” Lynch testified that he inspected
the truck to see whether there were signs that appellant had removed and reinstalled
the engine as indicated on appellant’s invoice and form for “Mechanic’s Lien
Foreclosure.” Lynch testified that, first, it would be highly unlikely that a week-old
truck, such as the one at issue herein, would need a total engine rebuild after running
over a railroad track. Second, when an engine is installed at the factory, a substance
known as “Locktite” is applied to the bolts that hold pertinent parts in place to keep
the bolts from backing out from vibration during operation of the vehicle. Locktite
is pink in color and, when these bolts are removed, the Locktite flakes off in a white
color. Lynch testified that, here, certain bolts that would have to have been removed
during the repairs appellant claimed, were still pink, indicating that the bolts had not
been removed. Lynch also testified that certain bolts did not have any wrench marks
on them. In addition, Lynch testified that, had the truck been damaged from driving
over railroad tracks, as appellant claimed, other items in the truck that hung lower
underneath would necessarily have been damaged and were not. Further, Lynch
testified that this truck would hold, at most, two-and-a-quarter pounds of Freon in its
air conditioning system. Appellant’s invoice, however, reflects a charge for five
pounds. 
          Medina testified that appellant’s invoice reflects a charge for a new oil pan and
that Medina’s inspection of the truck revealed that the oil pan on the truck is the
original and that pertinent bolts had not been removed. Lynch and Medina each
testified that, in his opinion, based on training and experience, that the work appellant
presented in his invoice and used to support his “Mechanic’s Lien Foreclosure” had
not been performed. 
          Appellant presented the testimony of Jim Marshall of Apache Motors to show
that repairs had been performed. However, the trial court struck Marshall’s testimony
because he never made an in-court identification of appellant. 
           It is the jury’s responsibility fairly to resolve conflicts in evidence, to weigh
evidence, and to draw reasonable inferences from evidence. Threadgill v. State, 146
S.W.3d 654, 663 (Tex. Crim. App. 2004). From this evidence, the jury rationally
could have concluded that appellant did not perform the work that he listed on the
invoice that he presented to support his applications to the State of Texas for
“Mechanic’s Lien Foreclosure” and “Texas Certificate of Title,” and, therefore, that
he acted with intent to defraud Progressive, as the then registered owner of the truck,
by foreclosing a mechanic’s lien for repairs that were never performed. See Hart, 89
S.W.3d at 64; McGee, 923 S.W.2d at 608. 
          In addition, Officer Blankenship testified that he told appellant, when he spoke
with him on April 7, 2006, that Progressive would be contacting appellant to make
arrangements to pick up the truck and that Officer Blankenship understood that
Progressive would be paying appellant whatever was owed for the repairs. In his
notice of lien sent to Progressive, appellant asserted that, as of March 1, 2006, he was
owed $8,900.00 for repairs, including 243 days of storage. In addition, the record
shows that appellant did not mail this letter until April 12, 2006, which was after he
had spoken with Officer Blankenship. The return receipt indicates that Progressive
received the letter on April 13, 2006. 
          The record also shows, however, that appellant sent a notice of lien to Capital
One Auto Finance, Green’s lienholder, also dated March 1, 2006, in which appellant
claimed that he was only owed $7,100.00, including 243 days of storage. Further, the
record shows that appellant sent a notice letter to Green, also dated March 1, 2006,
in which appellant claimed that he was only owed $7,100.00, including 243 days of
storage. 
          From this evidence, the jury could have rationally concluded that appellant,
relying on statements by Officer Blankenship that Progressive was going to pay him
whatever was owed, acted with intent to defraud Progressive by making a certified
demand for artificially inflated sums in conjunction with the foreclosure of his
mechanic’s lien. See Threadgill, 146 S.W.3d at 663; Hart, 89 S.W.3d at 64; McGee,
923 S.W.2d at 608. 
          Appellant points out that Officer Blankenship testified that the signature of “Ira
Green” on appellant’s invoice matched Green’s signature on the police statement. 
Green’s testimony shows, however, that the nature of Green’s business, as a courier,
is that he is required to sign delivery documents and requisitions of all kinds and that
many of these documents were in the truck at the time it was stolen. The jury could
have rationally chosen to believe Green’s testimony. See Threadgill, 146 S.W.3d at
663.
          Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found beyond a reasonable doubt that appellant
“made, presented, or used a governmental record with knowledge of its falsity” and
that he acted with intent to defraud Progressive. See id.; see also See Tex. Penal
Code Ann. § 37.10(a)(5). We hold that the evidence is legally sufficient to support
the jury’s verdict. See Johnson, 23 S.W.3d at 7. 
          Accordingly, we overrule appellant’s first issue.
D.      Factual Sufficiency
          In his second issue, appellant contends that the evidence is factually
insufficient to support his conviction. As discussed above, we have concluded that
the State presented legally sufficient evidence to support appellant’s conviction. 
          Appellant contends that the evidence is factually insufficient because “[t]here
is no evidence that he tried to not inform [sic] the police of the vehicle’s existence
and status,” because “[t]here is no evidence that [appellant] did not do some work on
the vehicle,” and because Progressive simply failed to timely challenge his
mechanic’s lien. 
          These factors, even if true, do not render the evidence factually insufficient. 
Appellant is charged with having “use[d] or present[ed] a governmental record,
namely, a mechanic’s lien foreclosure, with knowledge of its falsity” and “with intent
to defraud another.” Whether appellant contacted the police or performed “some
work” on the truck does not have any bearing on his attestation by sworn affidavit in
the “Mechanic’s Lien Foreclosure” that Progressive was the party which dropped off
the truck for repairs on July 28, 2005. 
          In addition, two certified mechanics testified that appellant did not perform the
work listed on his invoice. We must accord “due deference” to the fact finder, who
is in the best position to evaluate the credibility and demeanor of witnesses. 
Marshall, 210 S.W.3d at 625. Based on the evidence before it, the jury could have
rationally concluded that, no work was performed. Morever, even if the jury believed
that appellant performed “some work” on the truck, the jury could have rationally
concluded that the work that appellant presented in his invoice and used to obtain
foreclosure of his mechanic’s lien and the title to the truck was not performed. 
          Finally, any failure by Progressive to timely challenge appellant’s mechanic’s
lien does not negate evidence showing that appellant foreclosed a mechanic’s lien for
work that he did not perform or that appellant presented a “Mechanic’s Lien
Foreclosure” form to the Texas Department of Transportation, which became a
governmental record upon filing, and used the form to support his application for a
Texas certificate of title, with knowledge that he had falsely listed Progressive as the
party that had dropped off the truck for repairs on July 28, 2005. See Tex. Penal
Code Ann. § 37.10(a)(5); Johnson, 23 S.W.3d at 7; Parker, 192 S.W.3d at 804.
          Viewing all of the evidence in a neutral light, we cannot conclude that the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or that the
verdict is against the great weight and preponderance of the evidence. See Marshall,
210 S.W.3d at 625. We hold that the evidence is factually sufficient to support the
jury’s verdict.
          Accordingly, we overrule appellant’s second issue.
 
 
 
Conclusion
We affirm the judgment of the trial court.
                                                                   
 

 
Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).